W. A. PRICE and others v. DAVID JACKSON.

*Ejectment—Presumption of Grant—Adverse Possession.*

1. Where plaintiff in ejectment relies upon the presumption of a grant from the state arising from an adverse possession of thirty years, and introduces deeds which contain no metes and bounds or description by which the land can be located, and offers no evidence of known and visible boundaries; *Held* that he cannot recover.

2. Thirty years adverse possession, which was formerly held to be a presumption of a grant, is now by statute made an absolute bar against the state. But in such case the plaintiff must show a privity between himself and those who preceded him in the possession, and also, that the possession was held up to known and visible boundaries.

(*Fitz Randolph* v. *Norman*, N. C. Term Rep., 127; *Candler* v. *Lunsford*, 4 Dev. & Bat., 407; *Edwards* v. *Jarvis*, 74 N. C., 315, cited and approved.)

EJECTMENT tried at Spring Term, 1883, of PERQUIMANS Superior Court, before *Shepherd, J.*

Judgment for defendant; appeal by plaintiffs.

*Messrs. Grandy & Aydlett*, for plaintiffs.
*Messrs. Battle & Mordecai* and *J. W. Albertson*, for defendant.

ASHE, J. The land in controversy was the western half of a tract called the "Will Morris land."

The plaintiffs in support of their title, relied upon the presumption of a grant from the state arising from a possession of thirty years, and offered in evidence the following deeds:

1. A deed from John Mitchell to Will Morris, dated Jan. 23, 1820, conveying a tract of land containing 118 acres.

2. A deed from J. W. Albertson, dated August 20, 1852, to R. F. Overman, conveying 12 acres of the Will Morris tract, being the one-tenth said land.

3. A deed from Ed. Morris to R. F. Overman, dated January 11, 1853, conveying the one-tenth interest in the Will Morris land.

4. A deed from R. F. Overman to Tim. Morgan, dated August 10, 1853, conveying four undivided shares, fourtenths of the Will Morris land.

5. A deed from Tim Morgan to Ed. Davis, dated September 30, 1856, conveying 50 acres of the Will Morris tract lying next to Little river, being the eastern part of the Will Morris tract.

6. A deed from Joseph S. Cannon' to T. F. Banks, dated May 31, 1859, conveying 15 acres of the Will Morris tract adjoining David Jackson and others.

7. A deed from T. F. Banks to Sanford Davis, dated January 16, 1860, conveying 15 acres of the Will Morris tract.

8. A deed from Ed. Davis to Sanford Davis, dated February 16, 1865, conveying all that part of the Will Morris land, which lies west of a division line that "they made between Ed. Davis and Sanford Davis, which is the land in controversy, and is all woodland except about three acres which is now being cultivated by the defendant Jackson."

9. A deed from Tim Morgan to Sanford Davis, dated October 1, 1865, conveying 47 acres of the Will Morris land.

10. A deed from Sanford Davis to William, John, and Joseph Palin, dated February 17, 1868, conveying the western half of the Will Morris land.

11. A deed from William, John, and Joseph Palin to J. M. Price, dated December 28, 1868, conveying the western half of the Will Morris land.

The plaintiffs are the heirs at law of J. M. Price who died on the ...... day of ...... 18...

The only evidence as to possession offered by the plaintiffs was, that R. F. Overman put a tenant on the land sometime in the year 1853, who lived in a house on the eastern half of the land, and cultivated a small field around the house, and all the land on the western half of the tract was then in woods. This tenant remained in possession until 1856, when Ed. Davis took possession and cultivated the field until the commencement of this action. There was never any other possession of the land, except what we take to be a recent possession of the defendant Jackson on the western half of it.

In the instruction which His Honor gave the jury, "that the plaintiffs had failed to show a title out of the state," there was no error. The instruction was right, whether the case is governed by section 18 of the Code of Civil Procedure, or by the law as it existed prior to the adoption of that Code.

Before the Code of Civil Procedure, to prevent the uncertainty of titles, the courts of this state had adopted the arbitrary rule, that from the adverse possession of land for thirty years a grant from the state should be presumed—a rule so arbitrary that a jury was not permitted to find the fact against the presumption; nor was it necessary that the party in adverse possession should connect himself with those who had preceded him in the possession; nor was it necessary that the adverse possession should have been held up to *known and visible boundaries*, but only to the extent of the title claimed by the persons in possession, which might be shown by any of those ways which the law permits in the absence of metes and bounds set forth in deeds, or known and visible boundaries, as for instance, by the declarations of old men now dead, the deeds of neighboring tracts of land calling for the land in question by the name by which it was known, upon the principle, *id certum est quod certum reddi potest*. *Fitz Randolph* v. *Norman*, N. C. Term Rep., 127; *Candler* v. *Lunsford*, 4 Dev. & Bat., 407.

Here, none of the deeds read before the jury by the plaintiffs contained any metes and bounds, or any description of the land by which it could be located; nor was there any evidence adduced of any known or visible boundaries or other circumstance of identification sufficient to establish its location.

But the law is now changed, and the thirty years' adverse possession which was formerly held to be a presumption of a grant, is now by statute made, under certain circumstances, an absolute bar against the state.

It is provided by section 18 of the Code of Civil Procedure, "that the state will not sue any person for or in respect of any real property, or the issues or profits thereof, by reason of the right or title of the state to the same,"

1. "When the person in possession thereof, or those under whom he claims, shall have been in the adverse possession

thereof for thirty years, such possession having been ascertained and identified under known and visible boundaries ; and such possession so held shall give a title in fee to the possessor."

The plaintiffs fall still further short of bringing their case within the purview of this statute, because they are here not only required to show a privity between themselves and those who have preceded them in the possession, but that the possession was held by them up to *known and visible boundaries.*

But there is another point in the case equally fatal to the plaintiffs' recovery, and upon which the case might have been disposed of without more showing.   It is the failure of the plaintiffs to show an adverse possession of thirty years, which is necessary to oust the state, whether relied upon as a presumption or a statute of limitation..   The adverse possession, here, by counting the entire time from the commencement of the possession by Overman's tenant in 1853, including that of Ed. Davis, up to the commencement of the action in March, 1882, was only twenty-eight years and some months ; but the time intervening from the 20th of May, 1861, to the 1st of January, 1870, is not to be computed, *Edwards* v. *Jarvis,* 74 N. C., 315, and after deducting that time, there was only an adverse possession of about nineteen years.

There is no error.   The judgment of the superior court is affirmed.

                                        Affirmed.